# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

_____
CENGAGE LEARNING, INC. and
PEARSON EDUCATION, INC.,

      Plaintiffs,

vs.

JIHAD YOUSEF and BIG DEAL 4 U, INC.,

      Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiffs Cengage Learning, Inc. and Pearson Education, Inc. (collectively, "Plaintiffs"), for their Complaint against Jihad Yousef and Big Deal 4 U, Inc., (collectively, "Defendants"), allege, on personal knowledge as to matters relating to themselves, and on information and belief as to all other matters, as follows:

### INTRODUCTION

1.     Plaintiffs are among the world's leading educational publishers. They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

2.     Defendants are in the business of importing and distributing counterfeit textbooks. They purchase counterfeit copies of well-known and popular textbooks overseas, import them into the U.S. and then sell them to distributors and individuals.

3.     Plaintiffs bring this Complaint for damages and injunctive relief to bring to an

end and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, based on federal question jurisdiction.

5.      This is an action arising under the Lanham Act §§ 32, 42-43, 15 U.S.C. §§ 1114, 1124-1125, the Copyright Act, 17 U.S.C. § 101, *et seq.*, and 19 U.S.C. § 1526.

6.   Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a). Jurisdiction in this district is proper because Defendants, without the consent or permission of Plaintiffs, communicated, consummated a sale and shipped large quantities of unauthorized copies of Plaintiffs' copyrighted works bearing Plaintiffs' trademarks, for which Plaintiffs have the exclusive rights, to Sterling Education Media in Miami.  Such unlawful conduct occurred in this jurisdiction.  Thus, Defendants are subject to personal jurisdiction pursuant to Section 48.193(1)(a), Fla. Stat. (engaging in a business venture in this state) and Section 48.193(1)(b) (committing a tortious act within this state) and, 48.193(2) (engaging in substantial and not isolated activity within this state).

## <u>PARTIES</u>

7.      Plaintiff Cengage Learning, Inc., formerly Thomson Learning Inc., ("Cengage") is a Delaware corporation with its principal place of business at 20 Chanel Center Street, Boston, Massachusetts 02210.

8.      Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation with its principal place of business at One Lake Street, Upper Saddle River, New Jersey, 07458.

9.      Defendant Jihad Yousef ("Yousef") is an individual residing at 6155 Jimmy Carter Blvd., Suite H, Norcross, GA 30071-4606.

10.     Defendant Big Deal 4 U, Inc. is a Georgia corporation with a principal place of business at 6155 Jimmy Carter Blvd., Suite H, Norcross, GA 30071-4606.

## GENERAL ALLEGATIONS

11.     Cengage is among the world's largest providers of tailored learning solutions.  In the academic marketplace, Cengage serves secondary, post-secondary, and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments.  Cengage's products and services are sold throughout the world, through direct channels and via a worldwide network of distributors.  Cengage invests significant resources annually in the worldwide advertisement and promotion of its goods and services under all its marks.

12.     Pearson is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage.  With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson provides quality content, assessment tools, and educational services in all available media.

13.     Plaintiffs' publications are widely available in the marketplace, including in retail and online bookstores, for schools, students, and other consumers.

14.     Plaintiffs use their alliances, affiliations, and relationships with wholesalers and distributors as part of their respective overall sales, marketing, and distribution efforts, expanding Plaintiffs' geographic reach to actual and potential customers, and allowing Plaintiffs to operate across various mediums and formats.

15.     Plaintiffs invest heavily in textbook publishing.  Each year they incur substantial

costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of their editorial offices.

16.     The revenue from Plaintiffs' respective sales of textbooks represents a substantial amount (and in some cases a majority) of Plaintiffs' respective annual revenues, and is therefore important to their financial health.

17.     Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed.  A substantial decline in revenue from textbook sales could cause Plaintiffs to cease publication of one or more deserving books.  This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving works.

18.     Both publishers and authors alike are deprived of income when their books are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

19.     Many of Plaintiffs' customers, including libraries, academic institutions and book retailers, obtain their stock of Plaintiffs' products from wholesalers for many reasons, including that if a customer, such as library, wishes to purchase a number of titles from different publishers, a wholesaler would be in a better position to provide that customer with access to books from across the publishing industry.

## PLAINTIFFS' FEDERALLY REGISTERED COPYRIGHTS AND TRADEMARKS

### A.  Plaintiffs' Respective Copyright Registrations

20.     Cengage and Pearson have duly registered their copyrights in those works described on Exhibit A, among others (hereinafter, "Plaintiffs' Authentic Works").  Plaintiffs are the copyright owners of, and /or the owners of the exclusive rights under copyright in, Plaintiffs' Authentic Works.

### B.     Plaintiffs' Respective Trademark Registrations

21.     Plaintiffs' Authentic Works bear trademarks and service marks as set forth on Exhibit B (hereinafter, "Plaintiffs' Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Register of the United States Patent and Trademark Office. Plaintiffs own or are the exclusive licensee of Plaintiffs' Marks.  Plaintiffs' Marks are distinctive and arbitrary and are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with their Marks.

## COUNTERFEIT COPIES OF PLAINTIFFS' PUBLICATIONS

22.     Defendant Yousef is a buyer and seller of college textbooks to wholesale distributors as well as to individuals.  He undertakes the buying and selling of textbooks individually and on behalf of his company, Big Deal 4 U, Inc.  Defendants sell these textbooks to wholesalers.

23.     Beginning on a date unknown but at least as early as June 2014 and continuing to the present, Defendants have distributed counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (hereinafter "Pirated Books").

24.     Defendants commissioned, ordered, purchased and/or imported these Pirated

Books from one or more sources.  In so doing, Defendants deliberately evaded legitimate sources of the products in question and chose instead to obtain illegal and counterfeit copies of Plaintiffs' products from unknown sources, for the purpose of illegally distributing and reselling such copies to consumers in the United States and elsewhere, in violation of Plaintiffs' intellectual property rights.

25.     Defendants paid materially less than they would have had they purchased the books directly from the respective publishers or from a legitimate wholesaler.  In so doing, they should have been aware that there was a high likelihood that the books they were purchasing were counterfeit.

26.     At the time that Defendants purchased the Pirated Books, Defendants knew or should have known that the Pirated Works were infringing.

27.     After receiving the Pirated Books from various sources, Defendants distributed the Pirated Books as though they were legitimate to United States wholesalers, including Missouri Book Service ("MBS") and Sterling Education Media ("Sterling"), as well as to students and other individuals.  Defendants purchased Pirated Books for the purpose of distributing them to wholesalers who would further distribute them throughout the United States, including on dates from June through November 2014.

28.     Defendants knowingly supervised and controlled the distribution of the Pirated Books, and had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberately infringing activity.

29.     By engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Defendants also personally induced, caused, and materially contributed to infringing conduct by others, including the wholesalers to whom they sold the Pirated Works.  The wholesalers further distributed the Pirated Works.

30.     Defendants did more than supply the means to facilitate the infringement of Plaintiffs' intellectual property rights.  They also substantially participated in, and orchestrated, such infringing activities.

31.     Defendants conspired and acted in concert with others to accomplish their scheme to commit the above acts, which they knew would violate Plaintiffs' intellectual property rights, including their copyright and trademark rights in the Plaintiffs' respective Authentic Works.

32.     Upon information and belief, Defendants directed and controlled the infringing activities alleged in this Complaint and were and are in a position to benefit economically from the infringement of Plaintiffs' intellectual property rights, which they orchestrated.

33.     The Pirated Books are inferior to Plaintiffs' Authentic Works.  Among other differences, the binding, glue, paper, color, and printing are often different and inferior.  Based on the use of Plaintiffs' trademarks, actual and prospective purchasers are likely to believe that the Pirated Books are Plaintiffs' authentic publications.  Because the Pirated Books are inferior, this weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  It further injures Plaintiffs' business reputations by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

34.     In the fall of 2014, MBS notified Plaintiffs that it had purchased Pirated Books from Defendants, and MBS then shipped Defendants' books to Plaintiffs.  Upon inspection of those books, Plaintiffs determined that they were in fact counterfeit.

35.     In November 2014, Plaintiffs put Defendants on notice of the infringement. Plaintiffs sought from Defendants information regarding the source(s) for the counterfeit books they were purchasing.  Plaintiffs sought this information in order to halt further sales from those sources.  Plaintiffs heard from Sterling that Defendants purchased and/or imported at least some of the Pirated Books from Global Education Service Company (GESCO) in

8

Amman, Jordan.  Defendants have refused to confirm this or provide any more information about the extent of the purchases.

36.     At the same time that Plaintiffs sought information regarding the source of the counterfeit books, Plaintiffs similarly sought information relating to other titles of books Defendants had purchased from the same source.

**FIRST CLAIM FOR RELIEF**

**Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.* and
As An Act of Distribution Under 17 U.S.C. §§ 602**

37.     Plaintiffs hereby restate and incorporate by reference the allegations of paragraphs 1 through 36 as though fully set forth herein.

38.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by Plaintiffs with the United States Copyright Office and published by Plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

39.     At all relevant times, Plaintiffs have been and still are the owners of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

40.     Beginning on an unknown date, but at least since June 2014, and continuing to the present, Defendants, with knowledge of Plaintiffs' duly registered copyrights in the Authentic Works, infringed Plaintiffs' copyrights.  Specifically, Defendants infringed Plaintiffs' exclusive rights to reproduce and distribute to the public, by sale or other transfer of ownership, the copyrighted Authentic Works by, among other things, purchasing or otherwise obtaining the Pirated Books from sources whose products Defendants knew or should have known were unauthorized and illegal, or, alternatively, distributing and selling them for profit,

9

without the permission, license, or consent of Plaintiffs.  The Defendants also violated

Plaintiffs' duly registered copyrights by importing the Pirated Works, without Plaintiffs'

authority, into the U.S. from unknown sources abroad.

41.     As a result of Defendants' unlawful and deliberate conduct as set forth above,

Plaintiffs have been, and will continue to be, damaged.

42.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional,

knowing, malicious, and willful.

43.     Defendants' actions described above have caused, and will continue to cause,

irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless

Defendants are restrained by this Court from continuing their infringement of Plaintiffs'

copyrights and trademarks, these injuries will continue to occur in the future.  Plaintiffs are

accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

### Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114

44.     Plaintiffs hereby restate and incorporate by reference the allegations of

paragraphs 1 through 43 as though fully set forth herein.

45.     This claim, arising under Section 32 of the Lanham Act (15 U.S.C. § 1114), is

for infringement of trademarks registered to Plaintiffs in the United States Patent and

Trademark Office.

46.     Without Plaintiffs' authorization, Defendants are producing, marketing, offering

for sale, and selling in commerce textbooks under Plaintiffs' Marks.

47.     Defendants' aforesaid uses of Plaintiffs' Marks have caused, and are likely to

continue to cause, confusion, mistake, and/or deception as to the source or origin of

Defendants' goods, in that the public and others are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

48.     Plaintiffs are informed and believe, and on that basis allege, that Defendants will continue to use Plaintiffs' Marks unless enjoined.

49.     Defendants, by their above-enumerated acts, willfully and knowingly have violated and infringed Plaintiffs' rights in and to the federally-registered Marks, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendants threaten to further violate and infringe Plaintiffs' said rights.

50.     Plaintiffs are entitled to an order restraining and permanently enjoining Defendants from further use of Plaintiffs' Marks under 15 U.S.C. § 1116(a).

51.     Defendants' aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

### THIRD CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

52.     Plaintiffs hereby restate and incorporate by reference the allegations of paragraphs 1 through 51 as though fully set forth herein.

53.     Defendants are infringing the federally-registered Plaintiffs' Marks though their use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

54.     Defendants are intentionally using Plaintiffs' Marks on unauthorized product.

11

Defendants are intentionally infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

55.     The counterfeiting by Defendants of Plaintiffs' Marks has caused, and will continue to cause, serious and irreparable injury to the reputation and goodwill of Plaintiffs for which Plaintiffs have no adequate remedy at law.  Unless Defendants are restrained by this Court from continuing their counterfeiting activities, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further counterfeiting.

**PRAYER FOR RELIEF**

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.     Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2.     An accounting and disgorgement of Defendants' profits, gains, and advantages realized from its unlawful conduct, including a reconciliation of purchases and sales of the Pirated Books, with documents relating to all of the purchases and sales;

3.     That Defendant be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

4.     An order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

5.     That Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including statutory

damages or treble damages, pursuant to 15 U.S.C. § 1117;

6.      That Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

7.      That Defendants be required to pay actual damages and profits or statutory damages, at Plaintiffs' election, pursuant to 18 U.S.C. § 2318;

8.      An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

9.    For prejudgment interest at the applicable rate;

10.   Punitive damages;

11.   For attorneys' fees costs and costs of suit; and

12.   For such other and further relief the Court deems proper.

Respectfully submitted,

Dated: January 28, 2015          By:     /s/ *Matthew J. Oppenheim*
                                         Matthew J. Oppenheim
                                         DC Bar No. 443698 (*Pro Hac Vice to Be Filed*)
                                         **OPPENHEIM + ZEBRAK, LLP**
                                         5225 Wisconsin Avenue, NW, Suite 503
                                         Washington, DC 20015
                                         matt@oandzlaw.com
                                         Telephone: (202) 621-9027
                                         Facsimile: (866) 766-1678

                                         and

By:      /s/ *Karen L. Stetson*
Karen L. Stetson
FL Bar No. 742937
**GRAY ROBINSON, P.A.**
333 Southeast 2nd Avenue, Suite 3200
Miami, FL 33131
Karen.Stetson@gray-robinson.com
Telephone:  (305) 416-6880
Facsimile:  (305) 416-6887

*Counsel for Plaintiffs Cengage Learning, Inc. and Pearson Education, Inc.*

14